BRIGHAM *v.* LOCKE.

5-2386                                          345 S. W. 2d 935.

Opinion delivered May 8, 1961.

*Thompson & Thompson,* for appellant.

*Howell, Price & Worsham,* by *F. J. Howell, Jr.,* for appellee.

J. SEABORN HOLT, Associate Justice. This is a suit to set aside a deed because of the alleged lack of mental capacity on the part of the grantor. Stephen Breyel, an 81-year-old bachelor, has accumulated considerable property. One piece of this property is located near the corner of Markham and University Avenue in the City of Little Rock and is the parcel here involved. During the period between 1957 and 1959, a number of real estate agents and private individuals negotiated with Mr. Breyel trying to purchase the parcel from him. Among this group was a committee from the Woodlawn Baptist Church. On February 27, 1959, after extended negotiations, Mr. Breyel conveyed the property in question to the trustees of the Woodlawn Baptist Church. Two down payments of $1,000 each were made and a balance of $39,000 was to be accumulated through a mutual stock fund over a period of ten years. It is contended that the purpose of such an arrangement was to comply with a request of Mr. Breyel so that any tax on the sale of the property might be deferred. Shortly after the transaction had taken place, a guardian was appointed for Mr. Stephen Breyel at the request of his brother, Joe Breyel. The guardian filed suit to set the deed aside on the ground that the ward was incompetent at the time the deed was given. The lower court, after a hearing in the matter, found that the consideration was grossly inadequate and that Stephen Breyel was in fact incompetent on the day the deed was given and canceled the deed on these grounds. The trustees of the Woodlawn Baptist Church have appealed.

After a review of the evidence presented in the lower court, we are unable to say that the finding of the chancellor was against the preponderance of the evidence and conclude that the judgment must be affirmed. The evidence is overwhelming to the effect that the property was worth over $100,000 so there was gross inadequacy of consideration. It is a well settled rule in

Arkansas that a deed may be set aside for mental incompetence on the part of the grantor, *Kelly's Heirs* v. *McGuire*, 15 Ark. 555.

In order not to unduly lengthen this opinion we summarize portions of the evidence which we think supports the finding of the chancellor as to mental incompetence. There was Mr. Breyel's lack of interest, carelessness and untidy habits about his person and property. Several witnesses testified that Mr. Breyel's house was littered with magazines and newspapers and in the estimation of one witness, there was more than a truckload scattered on the floors of his living and bedrooms. The bathroom and kitchen were filthy. The house itself was in a state of general disrepair. The toilet did not work, there was no hot water, the shingles and eaves of the house were rotting away, the paint was peeling, despite the fact Mr. Breyel was an excellent carpenter and a man of means. The personal appearance of Mr. Breyel was that of an unshaven, unkept person and his clothes were dirty. Also, there is Mr. Breyel's withdrawal from his family, friends and relatives and social life generally. A nephew frequently invited Mr. Breyel to Sunday dinner and on other occasions and although Mr. Breyel usually accepted, he seldom came. Once when invited to a Christmas dinner by some friends, he accepted but when they arrived to pick him up, he had forgotten to dress and when they did arrive at the dinner, Mr. Breyel took his plate and ate alone on a sunporch and left after about thirty minutes. He seldom visited neighbors or relatives though the evidence was that in the past he had been a man of much social intercourse.

There was also evidence of Mr. Breyel's loss of memory. The record is replete throughout with examples of the ward's chronic memory lapses. Checks sent to him were lost in the house and not cashed. One witness stated that Mr. Breyel did some work for him in 1952 in putting up some ceiling joists but forgot to nail them down and the next day they fell. Mr. Breyel resigned from the job stating: "When a man thinks he

has got a ceiling joist nailed and he don't, then that is time to quit.'' On another occasion he listed eight lots for sale, two of which he did not own. A month after the deed to the property in question was signed, Mr. Breyel could not describe to his guardian what property he had sold. On two occasions he paid his real estate taxes twice. Once when reminded that he had already paid his taxes on the same day, he denied ever having done so. The collector testified that he always forgot to bring his tax slips and could not tell him where his property was located. Mr. Breyel forgot money which he had in savings accounts and on one occasion when he could not find the pass book to one of the accounts, he wrongfully accused a trusted friend of having the book.

The evidence also discloses Mr. Breyel's inability to make decisions and exercise reasonable judgment which a man of his previous business experience ordinarily would have been capable of. Prior to June of 1958, Mr. Breyel refused an offer of $1,000 for a six-month option to sell this property for $100,000. On another occasion he was offered $21,000 for another small parcel but refused, saying he wanted $40,000; later he sold the property for $14,000. He sold a truck which he owned to two boys, whose names and addresses he never secured and subsequently never received payment. He told the present appellants that he was going to sell them the property but the day after the deed was signed he was at the door of the pastor of the congregation and told the pastor he had decided not to sell the property after all. There is evidence that Mr. Breyel did not know the meaning of earnest money and its significance although he had made a number of real estate transactions previously.

Although this is only a partial abstract of the testimony presented, we think it sufficient to sustain the chancellor's finding as to lack of mental capacity. The appellants claim the trial court committed error in refusing to continue the case to allow appellants time to obtain medical testimony to rebut that offered by appellee. We find no error. The case was set and regu-

larly tried so appellants could and should have been able to present their medical testimony at the trial.

We wish to point out that there is no evidence of overreaching, undue influence, or otherwise bad faith on the part of the church trustees. This is simply a case of the guardian setting aside a voidable transaction on the part of his ward.

The judgment is affirmed.

WARD, J., not participating.